Submitted June 30, affirmed November 4, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

VINCENT MARCUS FURRILLO,
*Defendant-Appellant.*

Washington County Circuit Court
C130602CR; A155461

362 P3d 273

Peter Gartlan, Chief Defender, and Rond Chananudech, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and David B. Thompson, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

Defendant appeals a judgment of conviction for unlawful possession of heroin, ORS 475.854. He assigns error to the trial court's denial of his motion to suppress drug evidence found during a warrantless search of his backpack. Defendant argues that, under the circumstances of this case, the backpack was not subject to search under the automobile exception and that the search constituted a violation of his rights under Article I, section 9, of the Oregon Constitution, and under the Fourth and Fourteenth Amendments to the United States Constitution.[1] We affirm.

Reviewing for legal error, we are bound by the trial court's findings of fact, so long as there is sufficient evidence in the record to support them. *State v. Tovar*, 256 Or App 1, 2, 299 P3d 580, *rev den*, 353 Or 868 (2013). Absent express findings, we resolve factual disputes in a manner consistent with the trial court's ultimate conclusions. *State v. Watson*, 353 Or 768, 769, 305 P3d 94 (2013).

The facts are undisputed. Defendant was a passenger in a Jeep when the driver was pulled over for speeding.[2] Deputy Shah arrived at the scene as a cover officer. Defendant, his backpack, and the driver remained inside the Jeep. At Shah's request, Deputy Dipietro came with a drug dog to sniff the Jeep's exterior. The dog alerted to the presence of drugs. Shah directed defendant to get out of the Jeep so that it could be searched. When defendant got out, he took his backpack. Shah told defendant to "put the backpack back inside the vehicle where he had picked it up from." Defendant, however, put the backpack on the ground. Shah

---

[1] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

The Fourth Amendment, as applied to the states through the Fourteenth Amendment, provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[2] The deputy who made the stop also determined that the driver was driving with a suspended license, and the driver was unable to produce proof of insurance. Dispatch informed the responding deputies that the driver was on probation for possession of heroin.

picked up the backpack and returned it to the Jeep's interior.[3] Defendant asked Shah a few times if he could have the backpack, but Shah told him that he could not have it yet. Dipietro searched the Jeep and the backpack, finding in the backpack a paper bag containing syringes with a brown liquid, which later tested positive for heroin.

Defendant moved to suppress the drug evidence. At the suppression hearing, he argued that, although the drug-dog sniff occurred before he got out of the Jeep, he was a passenger and should be permitted "to leave with his own belongings." He argued that the deputies "didn't have the authority to take that backpack and put it back in the vehicle." The state responded that the backpack properly fell within the automobile exception because it was within the Jeep at the time that the deputies established probable cause for a drug-related offense. The state argued that a passenger cannot choose to remove a container from a car, after probable cause has been established, in order to take those containers outside the purview of the automobile exception.

The court denied defendant's motion, making a credibility finding in favor of the investigating deputies' recollection that defendant had not asked to leave before probable cause for a drug-related offense had been established. Defendant proceeded on a stipulated facts trial, and the court convicted defendant of unlawful possession of heroin.[4]

On appeal, defendant challenges the court's denial under both the state and federal constitutions. We begin with defendant's arguments under Article I, section 9. It is well established that, under our state constitutional analysis, "an officer may conduct a warrantless search of a vehicle provided that (1) it is 'mobile' at the time it is encountered by police or other governmental authority and (2) probable cause exists for the search." *State v. Bennett / McCall*, 265 Or App 448, 455, 338 P3d 143 (2014) (citing *State v. Brown,*

---

[3] Shah testified at the hearing on defendant's motion to suppress that he had directed defendant to put the backpack back into the Jeep because he "wanted everything that was inside of the car to be left as is since *** [the] canine had alerted on the vehicle." He believed that the backpack could contain drug evidence.

[4] The state dismissed a second count for unlawful possession of methadone, ORS 475.824.

301 Or 268, 276, 721 P2d 1357 (1986)). "[T]he police may search any area of the vehicle or any container within the vehicle in which they have probable cause to believe that the contraband or crime evidence may be found." *State v. Smalley*, 233 Or App 263, 267, 225 P3d 844, *rev den*, 348 Or 415 (2010); *see also Brown*, 301 Or at 279.

In this case, defendant neither challenges the Jeep's mobility nor probable cause to suspect a drug-related offense. Instead, we understand the parties' dispute to concern the proper scope of the search. The parties disagree whether a backpack removed from a vehicle by a suspect, after mobility and probable cause already have been established, is still subject to a warrantless search under the automobile exception. We conclude that it is.

Defendant first contends that police officers cannot rely on exigencies of their own making in support of a warrantless search and that, by returning the backpack to the Jeep, Shah created an exigency in order to conduct a warrantless search. We disagree. Exigency, as it relates to the automobile exception, is the result of the *mobility* of the vehicle. *State v. Meharry*, 342 Or 173, 177, 149 P3d 1155 (2006) (automobile exception is "a subset of the exigent circumstances exception" under which the "mobility of a vehicle, by itself, creates an exigency"). The exigency in this case was extant when defendant exited the Jeep. Any containers within the Jeep, which the deputies had probable cause to search for drug-related evidence, had already fallen within the purview of the automobile exception.[5] *See State v. Wiggins*, 247 Or App 490, 494 n 1, 270 P3d 306 (2011), *rev den*, 352 Or 33 (2012) (declining to impose temporal limitation on search conducted under the automobile exception). The scope of the search properly included containers belonging to defendant, despite his status as a passenger,

---

[5] That is not to say that there are no limits as to what containers fall within the scope of a permissible search under the automobile exception. As the Supreme Court observed in *Brown*, the scope of a search under the automobile exception is defined by "'the object of the search and the places in which there is probable cause to believe that it may be found.'" 301 Or at 279 (quoting *United State v. Ross*, 456 US 798, 824, 102 S Ct 2157, 72 L Ed 2d 572 (1982)). For instance, "'[p]robable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab.'" *Id.* (quoting *Ross*, 456 US at 824).

because the probable cause for the existence of contraband was associated with the vehicle. *See Tovar*, 256 Or App at 13 n 2. Once the requirements for the automobile exception had been established, taking the backpack out of the Jeep in an effort to avoid having it searched did not eliminate the exigency or otherwise remove the backpack from the purview of the search exception.

Defendant also contends that a backpack is indistinguishable from clothing worn by a suspect that would not properly fall within the scope of the automobile exception. *State v. Jones*, 253 Or App 246, 247, 289 P3d 360 (2012) (automobile exception does not permit a warrantless search of a suspect's pants pocket while suspect is standing outside the vehicle). Again, we disagree. We have observed that, in order to search containers within a vehicle, an officer need not "have probable cause to believe that a discrete container holds evidence of crime." *Bennett/McCall*, 265 Or App at 457. That is because the proper scope of a search under the automobile exception "is defined by the warrant that the officer *could* have obtained[.]" *Tovar*, 256 Or App at 14 (emphasis in original). In this case, the backpack was in the Jeep when the drug dog sniffed the exterior and alerted to the presence of drugs. The backpack was subject to search because it was a discrete container within the vehicle that reasonably could have been expected to contain contraband or crime evidence. *Bennett/McCall*, 265 Or App at 457 (citing *Smalley*, 233 Or App at 267).

Defendant fares no better under a federal constitutional analysis. Under the Fourth Amendment, "a vehicle, because of its ready mobility, may be searched without a warrant if the police have probable cause to believe it contains contraband." *State v. Mosley*, 178 Or App 474, 483, 38 P3d 278 (2001), *rev den*, 334 Or 121 (2002) (citing *California v. Carney*, 471 US 386, 105 S Ct 2066, 85 L Ed 2d 406 (1985); *Chambers v. Maroney*, 399 US 42, 90 S Ct 1975, 26 L Ed 2d 419 (1970); *Carroll v. United States*, 267 US 132, 45 S Ct 280, 69 L Ed 543 (1925)). Although the permissible scope of the search does not extend to body searches of the vehicle's occupants, *State v. Freeman*, 253 Or App 472, 473, 290 P3d 908 (2012) (citing *United States v. Di Re*, 332 US 581, 586-87, 68 S Ct 222, 92 L Ed 210 (1948)), it includes any

containers within the vehicle where the suspected contraband or evidence may be concealed, *California v. Acevedo*, 500 US 565, 572, 111 S Ct 1982, 114 L Ed 619 (1991); *United States v. Ross*, 456 US 798, 823, 102 S Ct 2157, 72 L Ed 2d 572 (1982); *State v. Fix*, 83 Or App 107, 111, 730 P2d 601 (1986).

Defendant does not cite, nor are we aware of, any authority providing that a backpack under these circumstances is the same as a body search of a vehicle's occupant.[6] Under a federal analysis, the backpack fell within the scope of a permissible search under the automobile exception because it was a container within the vehicle where the suspected contraband or evidence may have been concealed. The trial court did not err in denying defendant's motion to suppress.

Affirmed.

---

[6] Defendant primarily relies on *State v. Funkhouser*, 140 Md App 696, 782 A2d 387 (2001), for his argument that the backpack would not be subject to search under the automobile exception. *Funkhouser*, however, is inapposite. In that case, the court reviewed the state's interlocutory appeal of a ruling suppressing drug-related evidence found in a search of the defendant's fanny pack. Significantly, the court recited that the defendant, who was wearing the fanny pack around his waist, had been ordered out of the vehicle *before* a drug dog sniffed and alerted to the presence of drugs. *Id.* at 707-08. The court further emphasized that the fanny pack was not inside the vehicle "during the *Carroll* Doctrine search" of the vehicle but that, "[h]ad it been and had it not been attached to the body of [the defendant], it would unquestionably have been vulnerable to a warrantless search." *Id.* at 715.