Submitted January 26, 2016, affirmed February 23, petition for review allowed June 15, 2017 (361 Or 543)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# JACOB REGINALD BLISS,
*Defendant-Appellant.*

Marion County Circuit Court
14C41783; A157214

390 P3d 1099

Peter Gartlan, Chief Defender, and Laura E. Coffin, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Peenesh H. Shah, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Lagesen, Judge, and Garrett, Judge.

**LAGESEN, J.**

In *State v. Brown*, 301 Or 268, 273-79, 721 P2d 1357 (1986), the Supreme Court recognized the Oregon automobile exception to the warrant requirement of Article I, section 9, of the Oregon Constitution. Under that exception, "[p]robable cause to believe that a lawfully stopped vehicle which was mobile at the time of the stop contains contraband or other crime evidence justifies an immediate warrantless search of the entire automobile for the object of the search." *Id.* at 277. The question in this case is whether our state's automobile exception applies where police lawfully stop a moving vehicle for a traffic violation, rather than for a crime, and then, during the course of the traffic stop, develop probable cause to believe that the vehicle contains contraband or evidence of a crime and search the car accordingly. Surprisingly, this is a question neither we nor the Supreme Court has addressed directly.[1] In defendant's view, the Supreme Court's decisions in *State v. Kurokawa-Lasciak*, 351 Or 179, 263 P3d 336 (2011), *State v. Meharry*, 342 Or 173, 149 P3d 1155 (2006), and *State v. Kock*, 302 Or 29, 725 P2d 1285 (1986), clarify that the automobile exception does not apply under such circumstances. We disagree with that view. We conclude that the automobile exception adopted in *Brown* applies regardless of whether the lawful stop of a moving vehicle is for a traffic violation or for a crime, and that the court's subsequent decisions in *Kurokawa-Lasciak*, *Meharry*, and *Kock* do not limit the exception's applicability to only those vehicles that have been stopped for suspected involvement in criminal activity. Because the trial court reached the same conclusion in denying defendant's motion to suppress, we affirm the judgment on appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts are not disputed. Trooper Davis stopped defendant for speeding after observing him driving 79 miles per hour on a highway with a posted speed limit of 60 miles per hour, and promptly smelled a strong odor

---

[1] *State v. Belander*, 274 Or App 167, 177 n 5, 360 P3d 580 (2015) (noting that no Oregon case has directly addressed the question of whether the automobile exception applies where a moving car is stopped for a traffic violation instead of a crime).

of marijuana coming from the car. Davis ran the plates on defendant's car and discovered that they belonged to a different vehicle. Davis then asked defendant to explain why that was the case. While Davis talked to defendant about the plates, he became concerned that defendant was concealing a weapon in the car and asked defendant to step out of the car so that Davis could check defendant for weapons. When Davis conducted the patdown, he felt a thin glass pipe with a bulbous end in defendant's right front coat pocket. Davis asked defendant if it was a methamphetamine pipe, and defendant confirmed that it was. Davis also found a piece of wadded up plastic containing powder residue.

Based on Davis's belief that what he had found was methamphetamine, and because in his experience "illegal drug users often carry small amounts to moderate amounts [of drugs] on their person or in their vehicles" and "often carry weapons," he proceeded to search defendant's car for further evidence of drugs or weapons. Davis found a backpack in the trunk that smelled strongly of marijuana; in that backpack there were two large individually packaged bags of marijuana. He also found additional white powder residue that he believed to be cocaine, methamphetamine, or heroin.

Davis's discoveries led to three charges against defendant: delivery of marijuana, ORS 475.860(2) (Count 1); possession of methamphetamine, ORS 475.894 (Count 2); and possession of four or more ounces of marijuana, ORS 475.864(3) (Count 3). Before trial, defendant moved to suppress the evidence seized from his car, the methamphetamine-related evidence seized from his person as a result of the patdown, and his admission to Davis that the pipe in his pocket was a methamphetamine pipe. As to the evidence seized from defendant's car, defendant did not dispute that Davis had probable cause to believe the car contained contraband or evidence of a crime at the time that he searched it. However, he contended that the automobile exception did not authorize Davis's search because Davis had stopped defendant for speeding—not in connection with a crime—and that no other exception to the warrant requirement applied. The trial court rejected that argument, concluding that the automobile exception, as articulated by the Supreme

Court in *Brown*, authorized the search of the car because Davis had lawfully stopped the car and had probable cause for the search. The court also denied defendant's motion as to defendant's statement and as to the methamphetamine pipe. Thereafter, the state dismissed Counts 2 and 3, and, following a stipulated facts trial, the trial court convicted defendant on Count 1 for delivery of marijuana.

Defendant appeals. He raises three assignments of error, contending that the trial court erred by not suppressing the evidence from his car, the evidence from his person, and his admission regarding the methamphetamine pipe.[2] As to the evidence from his car, he argues, as he did below, that the automobile exception does not apply where an officer lawfully stops a moving car for a traffic violation rather than a crime. Accordingly, defendant contends that, because Davis stopped defendant for speeding and not for a crime, the automobile exception did not permit the search of his car and the trial court therefore erred by denying defendant's motion to suppress the evidence seized from his car.

In response, the state argues that the trial court correctly concluded that the automobile exception adopted in *Brown* authorized Davis's search of defendant's car, notwithstanding the fact that Davis pulled defendant over for speeding and not because he suspected defendant had committed a crime.

## STANDARD OF REVIEW

As framed by the parties, the legal issue before us is whether the Oregon automobile exception adopted in *Brown* authorizes a warrantless search where an officer lawfully stops a moving car for a traffic violation, rather than a

---

[2] As to the methamphetamine-related evidence (the methamphetamine residue and defendant's admission about the pipe), the state argues that we need not reach defendant's arguments regarding that evidence because the admission of that evidence, if erroneous, was harmless. The state points out that defendant was convicted solely of delivery of marijuana, and not for possession of methamphetamine, and argues that the admission of the methamphetamine did not "infect defendant's only conviction—marijuana delivery." We agree with the state that any error was necessarily harmless, in light of the fact that evidence likely had no effect on the trial court's decision to convict defendant of possession of marijuana. We therefore affirm the judgment of the trial court as to that assignment of error.

crime, but then develops probable cause that the car contains contraband or evidence of a crime during the course of the stop. That issue is one of law, and we therefore review for legal error. *State v. Finlay*, 257 Or App 581, 583, 307 P3d 518, *rev den*, 354 Or 389 (2013) (reviewing trial court's application of the automobile exception for errors of law when underlying facts were not disputed).

## ANALYSIS

The question presented is one which, as noted, we have not answered directly and the Supreme Court has not addressed explicitly: Does the automobile exception adopted in *Brown* apply to authorize a warrantless search of a vehicle where, as here, an officer lawfully conducts a roadside traffic stop for a traffic violation and, during the course of the stop, develops probable cause to believe that the vehicle contains contraband or evidence of a crime? Because the automobile exception derives from Supreme Court precedent, answering that question requires us to determine whether the Supreme Court, in adopting the exception, intended it to apply under the circumstances present here. *See State v. Smalley*, 233 Or App 263, 266 n 1, 225 P3d 844, *rev den*, 348 Or 415 (2010) ("Because the automobile exception derives from Oregon Supreme Court precedent, we lack the authority to narrow or overrule it."). Based on our analysis of the Supreme Court's automobile exception case law, we conclude that the exception applies where, as here, an officer lawfully stops a moving car for a traffic violation and, during the course of the stop, develops probable cause that the car contains contraband or evidence of a crime.

The starting place for our analysis is *Brown*. That is because *Brown* is the case in which our Supreme Court first recognized the automobile exception, and the court has since explained that it continues to adhere to that articulation of the exception. *See Kurokawa-Lasciak*, 351 Or at 193. In *Brown*, the court established a bright-line rule that police could search a moving car that police had lawfully stopped: "[P]robable cause to believe that a lawfully stopped automobile which was mobile at the time of the stop contains contraband or other crime evidence justifies an immediate warrantless search of the entire automobile for the object

of the search, despite the absence of any additional exigent circumstances." 301 Or at 277. Before *Brown*, whether a warrantless search of a lawfully stopped vehicle was permissible depended on the specific facts of the case. *See State v. Andersen*, 269 Or App 705, 709, 346 P3d 1224 (en banc), *rev allowed*, 357 Or 595 (2015) (explaining the state of the law before *Brown*). The court adopted the automobile exception because it was persuaded that it was a "sound approach" to provide clear guidelines to the police as to when they can and cannot search a car without a warrant:

> "We are convinced that adoption of a *'per se* exigency rule' is a sound approach which provides the clearest guidelines for police in conducting automobile searches. Exigencies should not be determined on a case-by-case basis. Police need clear guidelines by which they can gauge and regulate their conduct rather than trying to follow a complex set of rules dependent upon the particular time, location and manner of highway stops."

*Brown*, 301 Or at 277. At the time, the court contemplated that the need for the automobile exception might be temporary, although 30 plus years later, the court has retained the rule.[3] In deciding *Brown*, the court left open the question of what rule would apply to "a parked or impounded automobile." 301 Or at 277. However, shortly thereafter, the court ruled that the exception does not apply to authorize a warrantless search of a vehicle that is "parked, immobile and unoccupied

---

[3] The court opined:

"In this modern day of electronics and computers, we foresee a time in the near future when the warrant requirement of the state and federal constitutions can be fulfilled virtually without exception. All that would be needed in this state would be a central facility with magistrates on duty and available 24 hours a day. All police in the state could call in by telephone or other electronic device to the central facility where the facts, given under oath, constituting the purported probable cause for search and seizure would be recorded. The magistrates would evaluate those facts and, if deemed sufficient to justify a search and seizure, the magistrate would immediately issue an electronic warrant authorizing the officer on the scene to proceed. The warrant could either be retained in the central facility or electronically recorded in any city or county in the state. Thus, the desired goal of having a neutral magistrate could be achieved without the present invasion of the rights of a citizen created by the delay under our current cumbersome procedure and yet would fully protect the rights of the citizen from warrantless searches."

*Brown*, 301 Or at 278 n 6.

at the time that police first encounter it in connection with the investigation of a crime." *Kock,* 302 Or at 33.

Although *Brown* itself involved the lawful stop of a moving vehicle for suspected criminal activities, we identify three indications that lead us to conclude that the automobile exception applies when officers lawfully stop a moving vehicle, regardless of whether the stop was for a traffic violation or for a crime.

*First,* the plain words of the exception announced in *Brown* indicate as much. To reiterate, the rule states, "[P]robable cause to believe that a lawfully stopped automobile which was mobile at the time of the stop contains contraband or other crime evidence justifies an immediate warrantless search of the entire automobile for the object of the search, despite the absence of any additional exigent circumstances." *Id.* at 277. As we have recognized, that broad wording suggests that the exception applies whenever police lawfully stop a moving vehicle (assuming the requisite probable cause), regardless of whether the lawful stop is for a traffic violation or for a crime. *Andersen,* 269 Or App at 711 ("In other words, the Oregon automobile exception established in *Brown* to which the court adhered in *Kock* applies to automobiles that have just been lawfully brought to a stop by the police, that is, to automobiles that are moving when stopped by police.").

*Second,* the court's reasons for adopting the exception support the conclusion that it applies in the context of traffic stops as well as stops for suspected criminal activity. The stated purpose of the rule was to provide clear guidelines to police as to when they are permitted to search a car during a roadside stop, guidelines that did not depend "upon the [particular] time, location and manner of highway stops." *Brown,* 301 Or at 277. That suggests that the court contemplated that the automobile exception would apply in the context of all roadside stops, not just some of them; otherwise, the guidelines adopted would not provide the intended clarity to police.

*Third,* in recognizing the automobile exception, the court cited a number of decisions from other state courts, stating that it found them persuasive, at least three of which

upheld warrantless searches of automobiles in the context of roadside stops for traffic violations. *Brown*, 301 Or at 276-277, 277 n 5 (citing *People v. Smith*, 95 Ill 2d 412, 447 NE2d 809 (1982), *Wimberly v. Superior Court*, 16 Cal 3d 557, 547 P2d 417 (1976), and *People v. Cook*, 13 Cal 3d 663, 532 P3d 148 (1975)). That, too, suggests that the Supreme Court contemplated that the rule it was adopting would apply where an officer lawfully stops a moving car for a traffic violation.

Beyond those indicia of the scope of the Oregon automobile exception in *Brown* itself, the court's decision in *State v. Watson*, 353 Or 768, 305 P3d 94 (2013), also suggests that the Supreme Court intended for its automobile exception to apply in the context of a lawful traffic stop. There, the court explained that, under the "automobile exception" in *Brown*, an officer could constitutionally search a car that had been lawfully stopped for a traffic violation without a warrant when, during the course of the stop, the officer developed probable cause to believe that the car contained illegal drugs. *Watson*, 353 Or at 785 & 785 n 19. Although the court's statement is *dicta* on the issue before us—the court was not asked to decide whether its automobile exception applies in the context of a lawful traffic stop—we think that the court's statement, which suggests the court's understanding of a warrant exception that the court itself crafted, is at least somewhat probative of the court's intentions as to the scope of the Oregon automobile exception, and rely on it for that reason.

In arguing that the Oregon automobile exception does not apply in the context of a roadside stop for a traffic violation, defendant relies heavily on wording that appears in *Kurokawa-Lasciak*, *Meharry*, and *Kock*. Specifically, defendant notes that, in *Kurokawa-Lasciak*, the Supreme Court stated that *Brown* and *Kock* require "that, to qualify for the automobile exception, the vehicle that the police search must be mobile at the time that police encounter it in connection *with a suspected crime*." *Kurokawa-Lasciak*, 351 Or at 192 (emphasis added); *see also Meharry*, 342 Or at 179 (analyzing when an officer first encountered the defendant's vehicle "in connection with a crime" in order to determine whether automobile exception authorized warrantless search of vehicle); *Kock*, 302 Or at 33 (holding that

"any search of an automobile that was parked, immobile and unoccupied at the time the police first encountered it in connection with the investigation of a crime must be authorized by a warrant issued by a magistrate or, alternatively, the prosecution must demonstrate that exigent circumstances other than the potential mobility of the automobile exist"). Defendant argues that, in stating that an automobile must be mobile at the time that officers encounter it in connection with a "crime" for the automobile exception to apply, the court indicated its intention that the exception would not apply where a vehicle is encountered in connection with a traffic violation, and lawfully stopped only for that reason, and not because of a suspected crime.

Divorced from its context, the wording on which defendant relies could be read to suggest that those cases contracted the scope of the automobile exception as recognized in *Brown*, limiting its applicability to stops for criminal activity, thereby rendering it inapplicable in the context of traffic stops. However, the context of that wording persuades us that that was not the court's intention. *Kock*, *Meharry*, and *Kurokawa-Lasciak* are all cases involving parked cars; that is, cars "that had not just been lawfully stopped by a police officer." *Kock*, 302 Or at 32; *Meharry*, 342 Or at 180 (noting that officer had not effected the stop of the car, and that the defendant had parked her car herself); *Kurokawa-Lasciak*, 351 Or at 182, 194 (noting that the defendant had parked his car himself). Each required the court to assess the extent to which the automobile exception would apply outside the context of the standard roadside stop, in which police themselves have lawfully stopped a moving vehicle. The court's statement that a vehicle must have been mobile "when first encountered in connection with a crime" was by way of explanation that, under such circumstances, the automobile exception does not apply unless officers "see the car being driven when they first encounter it in connection with a crime." *Andersen*, 269 Or App at 714-15. Nothing in those cases suggests that the court was addressing whether the automobile exception should apply in the context of a traffic stop, let alone holding that the automobile exception would not apply in the context of a common roadside traffic stop. Given the court's strong indications in *Brown* that

the automobile exception applies in the context of any lawful roadside stop, had the court intended to narrow the scope of the exception in *Kock, Meharry,* and *Kurokawa-Lasciak* to exclude stops for traffic violations, we think it would have done so more explicitly.

In sum, we conclude that the Oregon automobile exception adopted in *Brown* applies where, as here, police lawfully stop a moving car for a traffic violation and develop probable cause to search the car for contraband or evidence of criminal activity. The trial court, therefore, correctly concluded that Davis's search of defendant's car was authorized by the automobile exception and correctly denied the motion to suppress the evidence seized from defendant's car.

Affirmed.